Filed 10/31/22 P. v. Trejo CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B315208 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. PA020848 |
| JUAN CARLOS TREJO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed.

Jenny M. Brandt and Nancy Gaynor, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 1996, a jury convicted appellant Juan Carlos Trejo of second degree murder and premeditated attempted murder on a direct aiding and abetting theory. The jury was not instructed on the natural and probable consequences doctrine or the felony murder rule. In 2021, Trejo filed a petition for resentencing under Penal Code[1] section 1170.95 (now § 1172.6)[2] in which he argued that the jury convicted him of murder and attempted murder under an invalid imputed malice theory of liability. The trial court summarily denied the petition without addressing Trejo's attempted murder conviction.

Senate Bill No. 775 (2021–2022 Reg. Sess.) (SB 775), which took effect after the trial court denied Trejo's petition, amended section 1172.6 to permit individuals convicted of murder under a theory of imputed malice and of attempted murder under the natural and probable consequences doctrine to petition for resentencing. On appeal, Trejo contends that SB 775 applies retroactively and that the case should be remanded for a new hearing on whether a prima facie case for eligibility exists under section 1172.6. We agree that SB 775 applies to this appeal but conclude that the record of conviction conclusively negates the possibility that Trejo was convicted of second degree murder or attempted murder under a theory of imputed malice. Remand for a prima facie hearing on Trejo's attempted murder conviction would therefore be futile. Accordingly, we affirm.

---

[1] All undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change to the text (Stats. 2022, ch. 58, § 10).

# FACTUAL BACKGROUND

Our summary of the underlying facts is taken from the unpublished opinion in *People v. Rivera and Trejo* (Sept. 24, 1998, B108281) [nonpub. opn.] (*Trejo I*).[3]

Mainor Rivera and Trejo were members of the Mara Salvatrucha (M.S.) gang. M.S. and the Langdon Street gang were rivals. Both operated in the Sepulveda area of the City of Los Angeles near Langdon and Nordhoff. The gangs, which had a common "border," were enemies.

At about 6:30 p.m. on June 25, 1994, Israel Pinedo and Albert Aceves, members of the rival Langdon Street gang, were with other members of their gang near the gangs' common border on Langdon and Nordhoff. A white car with a black stripe and tinted windows slowly approached the group of Langdon Street gang members. Pinedo and his friends yelled "Langdon." Rivera, who was a passenger in the car, stuck a gun out of the window and fired it three times in rapid succession. Pinedo was hit by one of the bullets, which passed completely through his left side. Aceves was struck by a bullet, fatally shot in the torso. After the shots were fired, Pinedo heard Rivera call out "M.S."

Anita Ruiz and her boyfriend Marcelino Garcia were driving westbound on Nordhoff, approaching Langdon when they heard gunshots. Garcia saw a passenger in a car pull a gun back into that vehicle and a group of males dropping to the ground. The gunman was holding the gun in his right hand. Garcia and Ruiz followed the white Toyota carrying the shooter onto the freeway, pulled up to the car and recorded its license plate

---

[3] Trejo's petition for resentencing likewise takes its statement of facts from *Trejo I*.

number. When the car left the freeway, Ruiz got a look at the driver. She described him as having short hair or a shaved head. The passenger had "shaved hair" and a build similar to that of Rivera. Both were Hispanic. Pinedo positively identified Rivera as the person who had fired the gun. A photograph seized at Rivera's residence showed him holding a weapon that could have fired the bullets that killed Aceves and wounded Pinedo.

The police tracked down and contacted the registered owner of the car used in the shootings, Mario Lopez. Lopez told them his wife's cousin, Trejo, had borrowed the car on the date of the shootings and had not returned until after 8:00 p.m. Trejo admitted to the police that he had been driving his cousin's car on the evening of the shootings.

## PROCEDURAL BACKGROUND

On September 17, 1996, the Los Angeles County District Attorney filed an amended information charging Trejo and his codefendant Mainor Rivera with one count of murder (§ 187, subd. (a)), one count of premeditated attempted murder (§§ 664/187, subd. (a)), and one count of assault with a firearm (§ 245, subd. (a)(2)). The prosecution also alleged an enhancement against Trejo for the use of a gun during the commission of the offenses, which attached to each charged crime.

The jury was not instructed on natural and probable consequences or felony murder, but on direct aiding and abetting. The jury was instructed with CALJIC No. 3.00, which states: "The persons concerned in the [commission] [or] [attempted commission] of a crime who are regarded by law as principals in the crime thus [committed] [or] [attempted] and equally guilty thereof include: [¶] 1. Those who directly and actively [commit]

4

[or] [attempt to commit] the act constituting the crime, or [¶] 2. Those who aid and abet the [commission] [or] [attempted commission] of the crime." The jury was also read CALJIC No. 3.01, which provides in relevant part: "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice, promotes, encourages or instigates the commission of the crime."

The jury found Trejo guilty of second degree murder and premeditated attempted murder. The jury also found true the gun enhancement alleged against Trejo. Trejo was sentenced to 16 years to life in state prison. This court affirmed the judgment in 1998 in *Trejo I*.

On December 30, 2019, Trejo filed a petition for resentencing of his murder conviction. On January 22, 2020, the trial court denied the petition. The court stated that the jury had not been instructed on murder based on either a felony murder or a natural and probable consequences theory of liability and that it was "clear" that the murder conviction was based on aiding and abetting. The trial court therefore concluded that Trejo had failed to establish a prima facie case that entitled him to relief and summarily denied his petition.

Trejo appealed from that denial and this court granted Trejo's motion to stay the appeal and for a limited remand to allow him to seek relief under former section 1170.95 following changes to the law enacted by Senate Bill No. 1437 (2017–2018

5

Reg. Sess.) (SB 1437).[4] In his second petition for resentencing, filed March 12, 2021, Trejo sought resentencing of both his murder and attempted murder convictions. He acknowledged that the jury had not been instructed on natural and probable consequences as a theory of liability, but contended that he could have been convicted of murder and attempted murder on an imputed malice theory.

On September 13, 2021, the trial court summarily denied the petition. The trial court observed that Trejo was convicted of, among other crimes, second degree murder and that the jury had been instructed on direct aiding and abetting and express and implied malice, not as to the natural and probable consequences doctrine. Nor was the jury given felony murder instructions. The court concluded that direct aiding and abetting required the jury to find that Trejo shared the specific mental state (i.e., malice) as the actual killer, and that, "[b]ased on the record of conviction, including the jury instructions given (and instructions not given", it was "evident" that a finding of malice or implied malice was the basis of conviction. The court did not address Trejo's attempted murder conviction.[5]

Trejo timely appealed.

---

[4] We ultimately lifted the stay and considered the brief Trejo's counsel originally filed, which asked this court to review the record independently under *People v. Wende* (1979) 25 Cal.3d 436. We concluded that no arguable issues existed and dismissed the appeal. (*People v. Trejo* (Dec. 7, 2021, B304686) [nonpub. opn.] (*Trejo II*).)

[5] At the time, former section 1170.95 had not yet been amended to include attempted murder as a crime for which relief could be sought. (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006 (*Montes*).)

## DISCUSSION

Trejo contends that the court erred in summarily denying his petition for resentencing because the instructions given to the jury could have permitted it to convict him of second degree murder and attempted murder based on a theory of imputed malice, and that he is therefore entitled to relief following the changes to section 1172.6 enacted by SB 775. The Attorney General does not dispute that the current version of section 1172.6 should be applied, but contends that the absence of felony murder or natural and probable consequences instructions is determinative and that the trial court's order should be affirmed on that basis alone. The Attorney General argues in the alternative that Trejo's attempted murder conviction negates the possibility that implied malice was imputed to him with respect to his second degree murder conviction.

The trial court's denial of Trejo's petition without issuing an order to show cause is a purely legal conclusion, which we review de novo. (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, abrogated on other grounds by *People v. Strong* (2022) 13 Cal.5th 698.) We affirm.

1. **Changes to the Law of Murder and Attempted Murder and Section 1172.6**

SB 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.) SB 775 modified the law to "expand the

7

authorization to allow a person who was convicted of murder under any theory under which malice is imputed to a person based solely on that person's participation in a crime . . . to apply to have their sentence vacated and be resentenced," and to clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1.)

Pursuant to section 1172.6, an offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); see also *id*., subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (*Id*., subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if

8

the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (*Id.*, subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

In determining whether a petitioner has made a prima facie showing of entitlement to relief, the trial court's inquiry will necessarily be informed by the record of conviction, which will facilitate the court in distinguishing "petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) This includes the jury instructions, which are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which must wait to occur until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis*.) The court is prohibited from engaging in " 'factfinding involving the weighing of the evidence or the exercise of discretion.' " (*Lewis*, at p. 972.) Rather, the court must " ' "take[ ] [the] petitioner's factual allegations as true" ' " and make a " ' "preliminary assessment regarding whether the petitioner would be entitled to relief if his or her

9

factual allegations were proved." ' " (*Id*. at p. 971) Only where the record of conviction contains facts conclusively refuting the allegations in the petition may the court make credibility determinations adverse to the petitioner. (*Ibid*.)

## 2. SB 775 applies to this appeal.

SB 775 did not take effect until after the trial court denied Trejo's petition for resentencing. (See *Montes, supra*, 71 Cal.App.5th at p. 1006.) Trejo argues that SB 775 applies retroactively to cases that were not final when SB 775 took effect. (See *People v. Langi* (2022) 73 Cal.App.5th 972, 978, fn. 3 (*Langi*) [no dispute that SB 775 applied where the appeal of defendant's petition for resentencing was pending when amendments took effect]; *People v. Porter* (2022) 73 Cal.App.5th 644, 652 [parties agreed that SB 775 applied because the order denying the petition for resentencing was not final when SB 775 took effect].) The Attorney General argues that it is unnecessary to decide this question, as Trejo could simply file a new petition if the denial of his old petition were affirmed under the old law. Thus, for reasons of judicial economy, the Attorney General contends that we should apply the current version of section 1172.6.

A criminal judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed. (See *People v. Porter, supra*, 73 Cal.App.5th at p. 652, citing *People v. Vieira* (2005) 35 Cal.4th 264, 305–306 and *People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5.) Because the order denying the petition for resentencing was not final when SB 775 took effect, we will apply section 1172.6 as amended by SB 775 in this appeal. (See *Porter*, at p. 652; accord, *People v. Basler* (2022) 80 Cal.App.5th 46, 56.)

### 3. The absence of felony murder or natural and probable consequences instructions is not determinative.

The Attorney General asserts that if the record of conviction indicates that a jury was not instructed on either the natural and probable consequences doctrine or on the felony murder doctrine, a petition must be denied without issuance of an order to show cause, citing *People v. Daniel* (2020) 57 Cal.App.5th 666, 677. However, *Daniel* was decided before the enactment of SB 775 and relied on the language of former section 1170.95, which provided relief only to those convicted of felony murder or murder under a natural and probable consequences theory. (*Daniel*, at p. 677.) Section 1172.6 now provides relief to those prosecuted for murder under "other theor[ies] under which malice is imputed to a person based solely on that person's participation in a crime," as well as those prosecuted under the felony murder doctrine and natural and probable consequences doctrine. (§ 1172.6, subd. (a)(1).)

Trejo cites *Langi, supra*, 73 Cal.App.5th 972, for the proposition that a defendant is entitled to relief under section 1172.6 where instructions provided to the jury permitted it to convict the defendant under a theory of imputed malice. Langi was part of a group of four who punched, kicked and robbed the victim. During the attack, the victim fell, striking his head, which led to his death. (*Langi*, at p. 975.) The jury was instructed using the standard CALJIC instructions on first degree felony murder, implied malice, and direct aiding and abetting, but not on the natural and probable consequences theory. (*Id.* at p. 981.) The jury acquitted Langi of first degree felony murder but convicted him of second degree murder, robbery and battery. (*Id.* at p. 977.) Langi filed a petition for resentencing, which was summarily

11

denied. (*Ibid*.) During the pendency of the appeal, SB 775 was passed.

The *Langi* court reversed and ordered an evidentiary hearing on the merits of the section 1172.6 petition. (*Langi, supra*, 73 Cal.App.5th at p. 976.) Even without explicit instruction on the natural and probable consequences theory, the court found that the record of conviction did not conclusively exclude the possibility that Langi was convicted under SB 775's newly added imputed malice theory. (*Langi*, at p. 976.) The court recognized the CALJIC instructions for aiding and abetting an implied malice murder did not adequately explain the mens rea required for implied malice murder liability. "Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement."[6] (*Id*. at p. 983.)

The court in *Langi* concluded that this instructional imprecision allowed the jury to find Langi "guilty of aiding and abetting second degree murder" by imputing malice based solely on Langi's participation in a crime, "without finding that he personally acted with malice." (*Langi, supra*, 73 Cal.App.5th at p. 982.) The court explained that "[t]he aiding-and-abetting instruction stated that a person aids and abets a crime if he or

---

[6] CALJIC No. 8.31 states that a killing is a second degree murder if: "1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

she acts '*with knowledge of the unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' [Citation.] However, . . . the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' [citation], his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Id.* at pp. 982–983.)

The court in *Langi* concluded that such a record of conviction does not support summarily denying a section 1172.6 petition at the prima facie stage. "Because the record of conviction does not conclusively negate the possibility that the jury found appellant guilty of second degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted" with implied malice, that is " 'with knowledge of the danger to, and with conscious disregard for, human life' [citation], an evidentiary hearing [was] required." (*Langi, supra,* 73 Cal.App.5th at p. 984.)

In light of *Langi*, we will consider whether the record of conviction conclusively negates the possibility that the jury found Trejo guilty of second degree murder by imputing to him the malice of his codefendant, rather than affirm on the ground that

13

the jury was not instructed on felony murder or the natural and probable consequences doctrines.

4. **Trejo failed as a matter of law to establish a prima facie case for resentencing with respect to his second degree murder conviction.**

Relying on *Langi*, *supra*, 73 Cal.App.5th 972, Trejo contends that the record does not conclusively establish that he personally acted with implied or express malice, as required to convict him of second degree murder. As in *Langi*, the jury here was instructed on the definition of principals and of aiding and abetting with CALJIC Nos. 3.00 and 3.01, respectively. (*Langi*, at p. 981 & fn. 8.) Although the jury in Trejo's case was instructed on second degree murder with CALJIC Nos. 8.11 and 8.30, as opposed to CALJIC No. 8.31 (*Langi*, at p. 981), Trejo argues that the result is the same. CALJIC No. 8.11 states the definitions of express and implied malice and does not require that the jury find that all defendants harbored malice,[7] and CALJIC No. 8.30 requires a finding that the perpetrator harbored malice.[8] Trejo

---

[7] CALJIC No. 8.11 states, in relevant part: " 'Malice' may be either express or implied. [¶] [Malice is express when there is manifested an intention unlawfully to kill a human being.] [¶] [Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."

[8] CALJIC No. 8.30 states: "Murder of the second degree is the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation or drive-by murder."

14

therefore contends that the jury could have convicted him if his codefendant harbored malice, so long as jurors believed there was sufficient proof that Trejo aided and abetted the codefendant's act. The Attorney General does not appear to dispute that, as in *Langi*, the instructions provided to the jury could have allowed the jury to convict Trejo of second degree murder without making an express finding that he personally acted with implied malice. However, the Attorney General argues that the jury was required to determine that Trejo personally acted with express malice to convict him of attempted murder. Because the same conduct resulted in both the attempted murder and second degree murder convictions, the Attorney General contends that the jury necessarily determined that Trejo committed second degree murder with express rather than implied malice.

*People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*) supports the Attorney General's position. The defendant in *Coley*, like Trejo, was convicted of second degree murder and attempted murder and appealed the denial of his petition for resentencing under section 1172.6. (*Coley,* at pp. 541–542.) The trial court concluded that the record of conviction showed the jury had found express malice, i.e., a specific intent to unlawfully kill, when it convicted appellant of attempted murder, and therefore denied the petition. (*Id.* at p. 545.) The Court of Appeal affirmed, concluding that the "appellant's conviction for attempted murder demonstrates that he was convicted of second-degree murder with express rather than *implied* malice" and that "*Langi* does not apply because that case involves implied malice." (*Id.* at p. 547.) The court explained that "appellant was convicted of murder based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction" and that

15

"[t]he jury was instructed by CALCRIM No. 600 that attempted murder requires a determination that 'the defendants intended to kill that person.' " (*Ibid.*) "[B]y finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second-degree murder." (*Ibid.*)

The statement of facts in Trejo's petition provides that his codefendant stuck a gun out of the window of the car and "fired three times in rapid succession," injuring Pinedo and killing Aceves. We are required to take these factual allegations as true. (*Lewis, supra*, 11 Cal.5th at p. 971.) Thus, as in *Coley, supra*, 77 Cal.App.5th 539, the record establishes that Trejo's second degree murder and attempted murder convictions arose out of the same shooting. We agree with the court in *Coley* that a conviction for attempted murder demonstrates that a second degree murder conviction arising out of the same conduct is based on express rather than implied malice, so long as jury instructions required a determination that each defendant personally harbored express malice.

Trejo contends that *Coley, supra*, 77 Cal.App.5th 539 "hinged entirely on the fact that his jury was instructed with CALCRIM No. 600," which required a determination that all defendants acted with express malice. Here, the attempted murder instruction, CALJIC No. 8.66, required that the jury find that a "direct but ineffectual act was done by one person towards killing another human being" and that "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The premeditated attempted murder instruction required that the jury find "that the attempt to commit murder was preceded and

16

accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation." Trejo therefore argues that CALJIC Nos. 8.66 and 8.67, together with CALJIC No. 3.00, could have led a juror to conclude: (1) Trejo's codefendant "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being"; (2) the codefendant premeditated the shooting; and (3) Trejo is "equally guilty" of any crimes committed by his codefendant.

We disagree. Although CALJIC No. 3.00's use of "equally guilty" has the potential to be misleading,[9] the jury in this case was instructed to "[c]onsider the instructions as a whole and each in light of all the others." The possibility that the jury may have imputed express malice to Trejo based on the "equally guilty" language is foreclosed by CALJIC No. 3.01, which required the jury to conclude that Trejo acted "*with knowledge of the unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing, encouraging, or facilitating the commission of the crime." (CALJIC No. 3.01, italics added.) Because CALJIC No. 8.66 required a determination that the perpetrator acted with express malice, or an intent to kill, Trejo's conviction of attempted murder as a direct aider and abettor demonstrates that the jury concluded that Trejo had knowledge of the direct perpetrator's intent to kill and that Trejo aided in the commission

---

[9] See *People v. Nero* (2010) 181 Cal.App.4th 504, 516 [the "equally guilty" language in CALJIC No. 3.00 is inconsistent with "the notion that an aider and abettor's mens rea 'floats free'" and thus "can be misleading"]; *accord*, *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918 ["former CALJIC No. 3.00 'could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding'"].

of the crime with the purpose of killing. In other words, the jury necessarily determined that Trejo himself harbored express malice.[10] The circumstances here are therefore distinguishable from those present in *Langi*, where the only conviction at issue was second degree murder, which does not require an intent to kill by the direct perpetrator and thus does not require that the aider and abettor knew of or shared any intent to kill. (*Langi, supra*, 73 Cal.App.5th at p. 982.)

Our conclusion is also supported by our high court's decision in *People v. Johnson* (2016) 62 Cal.4th 600. Although *Johnson* did not concern a petition for resentencing, the defendant in the case was convicted of first degree murder and argued that "instructing with former CALCRIM No. 400 violated his right to due process because the instruction misdescribed the prosecution's burden of proving his liability as an aider and abettor and permitted the jury to convict him of first degree murder based on the culpability of the perpetrator . . . without considering his own mental state." (*Id.* at p. 638.) Similar to

---

[10] Trejo argues that the Attorney General's concession that the premeditation allegation did not require the jury to find that appellant personally premeditated the crime "establishes that the jury understood that they could impute a mental state from the actual killer to appellant, regardless of appellant's actual intent." We disagree. Whether a crime was committed with express malice is a separate consideration from whether it was premeditated. (See *People v. Smith* (2005) 37 Cal.4th 733, 739–740 [attempted murder requires specific intent to kill, and the prosecution may seek an *additional* finding of premeditation "for purposes of sentence enhancement"].) Section 1172.6 provides relief only where a defendant has been convicted under a theory of imputed malice, not imputed premeditation. (§ 1172.6, subd. (a).)

CALJIC No. 3.00, former CALCRIM No. 400 stated that " '[a] person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.' " (*Johnson*, at p. 638, italics added.) The jury in *Johnson* was also instructed with CALCRIM No. 401 which, like CALJIC No. 3.01, stated "that for [the jury] to find defendant guilty of murder as an aider and abettor the prosecution must prove that defendant knew [his codefendant] intended to kill [the victim], that he intended to aid and abet [his codefendant] in committing the killing, and that he did in fact aid him in that killing . . . .' " (*Johnson,* at p. 641.) The Supreme Court concluded that CALCRIM No. 401 "would have cleared up any ambiguity arguably presented by former CALCRIM No. 400's reference to principals being 'equally guilty' " and thus "there was no reasonable likelihood the jurors would have understood the 'equally guilty' language . . . to allow them to base defendant's liability for first degree murder from the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing." (*Johnson,* at p. 641.)[11]

The trial court's denial of Trejo's section 1172.6 petition for resentencing without issuing an order to show cause was therefore appropriate.

---

[11] Trejo contends that the prosecutor misleadingly emphasized CALJIC No. 3.00 by arguing that the "aider and abettor . . . is just as liable as the person who actually pulled the trigger." However, as the Attorney General points out, this argument was made with respect to the gun enhancement. With respect to malice, the prosecutor argued that the evidence demonstrated that Trejo personally acted with an intent to kill.

## 5. Remand for a prima facie hearing on the attempted murder conviction would be futile.

Section 1172.6, subdivision (a) provides that persons "convicted of . . . attempted murder under the natural and probable consequences doctrine" may petition for resentencing. Because the statute only references the natural and probable consequences doctrine, the Attorney General contends that an individual convicted of attempted murder under other theories of imputed malice is not entitled to relief under section 1172.6 and that Trejo's appeal as to his attempted murder conviction is therefore meritless. In contrast, Trejo argues that the Legislature intended SB 775 to remedy "an absurd and unfair situation where people are eligible for resentencing if the victim died, but are ineligible if the victim did not die" (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 775 (2021–2022 Reg. Sess.) July 13, 2021, p. 3) by extending to persons convicted of attempted murder "the same relief as those persons convicted of murder under the same theories." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 775 (2021–2022 Reg. Sess.) Sept. 10, 2021, p. 1.) He asserts that it would be both illogical and a violation of the Equal Protection Clause if the Legislature addressed an unfair disparity between those convicted of murder and attempted murder by introducing a new disparity permitting only those convicted of murder under other theories of imputed malice to obtain relief.

We decline to address Trejo's contentions, as he would not be entitled to relief under section 1172.6 even if they had any merit. The jury in this case was not instructed on the natural and probable consequences doctrine and the record of conviction negates the possibility that he was convicted of attempted

20

murder based on a theory of imputed malice. Put differently, because the crime of attempted murder requires a specific intent to kill and the jury was so instructed, the jury necessarily found that Trejo himself harbored express malice. (See *People v. Guerra* (1985) 40 Cal.3d 377, 386 [the crime of attempted murder requires a specific intent to kill, a mental state coincident with express malice].) Although Trejo urges us to remand for a new prima facie hearing because the trial court did not address attempted murder in its original order, remand would be futile here.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.